[No. 5395.]
.[No. 3050 C. A.]

THE CACHE LA POUDRE IRRIGATION DITCH COMPANY
ET AL. v. HAWLEY, WATER COMMISSIONER, ET AL.
(THE NEW CACHE LA POUDRE IRRIGATION
COMPANY ET AL., INTERVENORS).

1.  **Water Rights—Distribution of Water—Water Commissioners
    —Duties.**

It is not the duty of a water commissioner to make any division or distribution of water between the users thereof from the same ditch, and he has no authority to interfere with the internal management of the affairs of a ditch company, but it is his duty to turn no more water into a ditch to which it is entitled under any decree than is necessary to serve the needs of the consumers under such ditch, and to refuse to turn water into any ditch for the use of one not entitled thereto.—P. 37.

2.  **Same.**

Where the right of a reservoir company to a proportion of the priorities belonging to a ditch company depended on the ownership of the stock of the ditch company, the water commissioner, in denying this ownership, based his action on a legal ground, and he was merely discharging the duties which the law imposed upon him by refusing to turn water into the canal of the ditch company for the use of one, which, as he alleges, was not entitled thereto, and in so doing he committed no tort. —P. 37.

3.  **Parties—New Parties—Intervention—Statutory Construction.**

Section 22, Mills' Ann. Code, provides that any person may intervene in an action, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. Held, that the purpose of this provision is, that one really interested in the result of an action may intervene and be made a party, so that the whole controversy shall be ended in one action and by a single judgment.—P. 39.

4.  **Same.**

Section 22, Mills' Ann. Code, provides that any person may . intervene in an action who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. In an action by a ditch company and by a reservoir company holding stock therein, to compel the water commissioner and other officials to recognize the right of the reservoir company to divert a certain proportion of the ditch com-

pany's appropriations, an irrigating company intervened, alleging that it was an appropriator, junior to the ditch company, but senior to the reservoir company; that the ditch company was not entitled, because of an abandonment, to more than a certain amount of water; that certain-stockholders of the ditch company assumed to sell to the reservoir company rights to the use of water under contracts which, by virtue of their reservations, conveyed no rights whatever; and that, if the reservoir company was permitted to divert the water, intervenor would be deprived of the use of water from the common source of supply to which it was entitled. Held, that such petition showed that the intervenor had such an interest in the litigation as entitled it to intervene; and that such intervention did not change the question at issue between plaintiffs and defendants. —P. 39.

5. Same.

Section 22, Mills' Ann. Code, provides that any person may intervene in an action, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. Held, that the question of whether or not a new issue of fact is presented by a petition of intervention, is not the test to apply in determining whether an issue different from that between the original parties will be made by the intervenor; but the true test is, whether or not the ultimate issue to be decided remains the same.—P. 40.

6. Pleadings—Motions for Judgment on the Pleadings.

In an action where the answers and petition in intervention filed raised material questions of fact, which must be determined from the testimony before a judgment can be rendered, a motion for judgment on the pleadings is properly denied. —P. 41.

7. Water Rights—Change of Place of Use—Rights of Junior Appropriators.

Certain stockholders in a ditch company, which was a senior appropriator of water from a stream, sold shares of stock to a reservoir company for the irrigation of other lands than those for which the priority was obtained. Held, that the loss of water to an appropriator, junior to the ditch company but senior to the reservoir company, occasioned by changing the place of use of the water, must be borne by the reservoir company.—P. 42.

8. Water Rights—Contracts—Validity.

A contract whereby certain stockholders in a ditch company sold their stock to a reservoir company, the vendors to con-

3

tinue in possession of their certificates, and to divert water for the use of their land to the same extent as theretofore enjoyed, and the reservoir company to have the right to divert for storage and direct irrigation the difference between the quantity of water actually needed by the vendors and the maximum represented by the certificates in the priorities of the ditch, was invalid as requiring the water rights evidenced by the shares of stock to do double duty.—P. 43.

*Error to the District Court of Larimer County.*
*Hon. Christian A. Bennett, Judge.*

Action by The Cache la Poudre Irrigating Ditch Company and The Larimer and Weld Reservoir Company against C. C. Hawley, as water commissioner of water district No. 3, James J. Armstrong, as superintendent of irrigation district No. 1, and Addison J. McCune, as state engineer. The New Cache la Poudre Irrigating Company, O. Shang, as executor, Frank Mechand Willcox, Edgar Barkley, Edson Warren, Franklin P. Riddle and J. C. Riddle, intervened. From a judgment adverse to plaintiffs, they bring error.    *Affirmed.*

Mr. L. R. RHODES and Mr. PAUL W. LEE, for plaintiffs in error.

Mr. JAMES W. McCREERY, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiffs in error instituted an action in the court below against the water commissioner of water district No. 3, the superintendent of irrigation division No. 1, and the state engineer, the purpose of which was to compel these officials to recognize the right of the reservoir company to divert 19-30 of the appropriations belonging to the ditch company. The complaint alleges that the ditch company is the

owner of certain priorities to the use of water from the Cache la Poudre river for the purpose of irrigation; that these priorities are the property of its shareholders, and that each share is entitled to 1-30 of the water flowing in its ditch by virtue of these priorities, and that the reservoir company is the owner of nineteen of these shares.  While the complaint is not very clear on the subject, enough is alleged from which it appears that the place and character of use of the water to which the reservoir company claimed to be entitled by virtue of the ownership of the shares in the ditch company, is changed, in that it appears to have constructed a lateral from the ditch of the ditch company through which it conveys its alleged share of the ditch company's priorities, for use upon lands other than those to which it was originally applied, and to a reservoir from which it is subsequently drawn to apply to lands belonging to its shareholders.  It then charges that the water commissioner has refused to allow any more than twenty cubic feet per second of time to flow into the ditch of the ditch company (this is far less than the aggregate volume represented by the priorities of the plaintiff's ditch); that he has refused to allow the reservoir company to take any water whatever by virtue of its ownership of shares in the ditch company; has refused to permit the superintendent of the latter to distribute any water flowing in its ditch to the reservoir company; and that the other water officials have refused to redress these alleged wrongs, although appealed to for that purpose.

The defendants filed answers, from which it appears that the main question between the plaintiffs and defendants is the right of the reservoir company to any portion of the decreed priorities of the ditch company, by virtue of the ownership of shares in

that company; that is to say, by the answers the ownership of the stock in question by the reservoir company was denied.

The New Cache la Poudre Irrigating Company, by leave of court, filed a petition in intervention, wherein it set forth that it was an appropriator from the Cache la Poudre river junior to the ditch company, but senior to the reservoir company. It then alleged facts upon which it is claimed that the ditch company has abandoned and forfeited its right to the water represented by its priorities in excess of twenty-two cubic feet per second of time; that certain stockholders in the ditch company claim to have sold a certain amount of the capital stock of that company to the reservoir company under a contract, whereby the vendors were to continue in the possession of their certificates, and to divert water for the use of their land to the same extent theretofore enjoyed, and that the reservoir company was to have the right to divert for storage and direct irrigation the difference between the quantity of water actually needed by the vendors to supply their needs and the maximum represented by these certificates in the priorities of the ditch; that it is the purpose of the reservoir company to change the place and character of the use of water which it diverts from the canal of the ditch company, and that if it is permitted to divert water to which it claims to be entitled by virtue of its ownership of the shares of the ditch company, that it will deprive the intervenor of at least forty cubic feet of water per second of time during the irrigation season, which for more than twenty years last past has been customarily and continuously enjoyed by it and other junior appropriators.

Plaintiffs filed a motion to dismiss the petition of the intervenor for the reason that it did not show an interest in the subject-matter of controversy, and

that it injected new issues into the case. This motion was denied, and this ruling is the first question called to our attention by counsel for plaintiffs. In support of the first proposition it is urged that the water officials were guilty of a tort in not recognizing the decrees under which the plaintiffs claimed to be entitled to water in excess of that which the commissioner turned into the ditch of the ditch company, and in refusing to allow the superintendent of the latter to turn into the lateral of the reservoir company any part of the water diverted from the river, and the action being to redress these wrongs which counsel denominate a tort, the intervenor had no right to intervene.

A water commissioner is not required, nor is it his duty, to make any division or distribution of water between the users thereof from the same ditch; neither has he any authority to interfere with the internal management of the affairs of a ditch company; but it is his duty to turn no more water into a ditch to which it may be entitled by virtue of any decree than is necessary to serve the needs of the consumers under such ditch, and to refuse to turn water into any ditch for the use of one not entitled thereto. The right of the reservoir company to a proportion of the priorities belonging to the ditch company, as stated by the plaintiffs in their complaint, depended upon the ownership of the stock of the ditch company. The water commissioner denied this ownership, so that he based his action, of which plaintiffs complain, upon a legal ground, and was merely discharging the duties which the law imposed upon him by refusing to turn water into the canal of the ditch company, for the use of one which, according to the issue made by his answer, was not entitled thereto. This was not a tort.

The intervenor company takes its supply of

water from the same source that the plaintiff ditch company does. By its petition it alleges, in effect, that the ditch company is not entitled to more than twenty-two cubic feet per second of time, because the excess of that volume has been abandoned by the ditch company; that certain of the stockholders of that company have assumed to sell to the reservoir company rights to the use of water under contracts which, by virtue of their reservations, in fact convey no rights whatever; but if the reservoir company is permitted to divert the water to which it claims to be entitled by virtue of an alleged ownership of the stock of the ditch company claimed under the contracts above referred to, intervenor will be deprived of the use of water from the common source of supply to which it is entitled. It thus appears, according to the petition of intervention, that the intervenor has a direct interest in the subject-matter of litigation in that the right to the use of water which the reservoir company claims it is entitled to divert affects the rights of the intervenor in the waters of the stream which is the common source of supply of the plaintiffs and intervenor. Our Civil Code provides, § 22:

"Any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both."

Under this provision it has been ruled by this court that a party is entitled to intervene in a suit between other parties when it appears that he has an interest in the subject-matter of litigation of such a direct and immediate character that he will either gain or lose by the direct legal operation and effect of the judgment, and that in determining the sufficiency of a petition to intervene, the averments of the petition, so far as well pleaded, must be taken as true.—*Henry v. Travelers' Ins. Co.*, 16 Colo. 179;

*Wood v. Denver City Water Works Co.*, 20 Colo. 253;
*Morey v. Lett,* 18 Colo. 128.

The purpose of our code provision on the sub-
ject of intervention is, that the one really interested
in the result of an action may intervene, and be made
a party, so that the whole controversy shall be ended
in one action and by a single judgment.—Pomeroy's
Rights and Remedies, § 411; *Morey v. Lett, supra.*

From the allegations of intervenor's petition it
is clear that it had that interest in the litigation
between the original parties which entitled it to inter-
vene.   For the purpose of determining the sufficiency
of the petition, its allegations must be taken as true.
It is apparent therefrom that the interest of inter-
venor in the litigation is actual; that it is ultimately
and actually interested in the result of the litigation;
that it is directly interested in the subject-matter of
controversy, *i. e.,* the right to divert water from the
common source of supply of the plaintiffs and itself,
and that it will either gain or lose by the operation of
a judgment on the questions to be litigated between
the plaintiffs and defendants; because, if the former
win, the stream will be depleted to the detriment of
intervenor; whereas, if the defendants are successful,
it is benefited.

It would be practically impossible for one to
intervene in an action without presenting a question
of fact not involved in the pleadings of the original
parties, and if this was inhibited, then our code pro-
vision on the subject of intervention would be of no
avail.   The question of whether or not a new issue
of fact is presented by a petition of intervention is
not the test to apply under a code provision as broad
as ours, in determining whether an issue different
from that between the original parties will be made
by the intervenor.   The issue between the plaintiffs
and defendants—that is, the question to be deter-

mined, as presented by their pleadings—was the right of the plaintiffs to have turned into the canal of the ditch company a certain volume of water from the river. The petition of intervention did not change this question in any respect. True, the intervenor pleaded facts upon which it predicated a right to the subject-matter of controversy which are not·stated in the original pleadings, and which, if established, would prevent the judgment which the plaintiffs seek, but that has not changed the original issue. It still remains as it was, *i. e.*, are or are not the plaintiffs entitled to divert the water from the stream which they claim? In other words, although intervenor predicates its right to the subject-matter of controversy upon which it relies for a judgment in its favor and to defeat a recovery in favor of plaintiff upon facts not stated in either of the pleadings of the original parties, yet the ultimate issue to be determined—the right to divert water from the stream—remains the same, and this appears to be the general rule by which to determine whether or not the intervenor has injected a new issue into the case in which he is allowed to intervene.

Upon overruling the motion just considered, plaintiffs filed an answer to the petition of intervention. In what they denominate their further answer, they set up what they designate as certain unconscionable transactions on the part of the intervenor by which it is claimed they were deprived of the use of water for a considerable period of time. Counsel upon their part also claim that one purpose of this answer was to show that the intervenor "did not come into court with clean hands." To this further defense a demurrer was interposed by the intervenor, and sustained by the court. This ruling was correct. Without going into details as to what this further answer stated, it is sufficient to say that

none of the facts therein alleged had any connection whatever with the subject-matter of controversy between the parties, nor could they aid the court in the slightest degree in determining the rights of the parties.

After this ruling plaintiffs filed a motion for judgment on the pleadings, which was denied. That this ruling was correct is apparent from the questions already determined. By the answers of the water officials and the petition of intervention material questions of fact were in issue which had to be determined from the testimony before a judgment could be rendered. In this state of the pleadings a motion for judgment thereon could not be entertained.

Thereafter there was a trial to the court and judgment and decree entered, which, at first, at least, was not satisfactory to either the plaintiffs or the intervenor company, as both excepted thereto; but the plaintiffs are the only parties who have brought the case here for review.

The court entered a decree to the effect that the reservoir company was the owner of six and one-half shares of the capital stock of its coplaintiff, and by virtue of such ownership, was entitled to divert, from the canal of the ditch company of the water of the decreed priorities of that company, for the use of its stockholders for direct irrigation only, and not for storage, one cubic foot of water per second of time for each share when needed and necessary for irrigation purposes.

The next two errors assigned are to the effect that the court erred in entering this decree and making its findings of fact upon which it was predicated, and particularly in limiting the right of the reservoir company to one cubic foot of water per second for each share of stock to which it was decreed to be

entitled, for the reason that such decree and findings were outside the issues made by the pleadings. There is no merit in the ground assigned in support of this contention. Under the issues made by the pleadings the volume of water which each share of the stock of the ditch company held by the reservoir company would represent, would have to be determined from the total amount of water which the ditch company was entitled to divert for the use of the reservoir company by virtue of its ownership of such stock. This would depend upon what the testimony established with respect to the customary use of the water represented by this stock as formerly enjoyed by the grantors thereof, and the pro rate share which each share of such stock would represent in the priorities of the ditch company when the water thereby represented was used by the stockholders of the reservoir company at points which would deprive the intervenor of water theretofore enjoyed because used upon lands of a different character, or differently located from those to which it was formerly applied. The loss of water to the intervenor occasioned by the reservoir company changing the place of use of the water represented by its shares of stock in the ditch company would have to be borne by the reservoir company. These were issues in the case, and whether or not they were correctly determined cannot be ascertained without an examination of the testimony. It has not been brought up in the bill of exceptions.

There were other intervenors whose rights were adjudicated, which we have not mentioned, because their right to intervene is not in any way challenged.

It is also contended on behalf of the plaintiffs that the court erred in holding that the contracts between individual intervenors and the reservoir company evidencing their transfer of stock in the

ditch company to the reservoir company were illegal and void, and in refusing to adjudicate the rights of the reservoir company in what is designated the "B. H. Eaton shares" in the ditch company. None of these questions can be determined without resort to the testimony. According to the petition of intervention, the contracts declared illegal undertook to make the water rights evidenced by the shares of stock to which they related do double duty. This the law inhibits.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.